UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DARREN JACKSON,

          *Plaintiff*,

      v.

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant*.
--------------------------------X

**MEMORANDUM AND ORDER**

16-cv-6183(KAM)

**MATSUMOTO, United States District Judge:**

      Pursuant to 42 U.S.C. § 405(g), Darren Jackson ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the Act. Plaintiff alleges that he is disabled under the Act and is thus entitled to receive the aforementioned benefits.

      Presently before the court is plaintiff's motion for judgment on the pleadings (ECF No. 25) and defendant's cross-motion for judgment on the pleadings (ECF. No 22). For the reasons stated below, Plaintiff's motion is GRANTED in part, Defendant's motion is DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

**a. Procedural History**

On November 7, 2012, plaintiff Darren Jackson filed an application for supplemental security income benefits and an application for disability insurance benefits. (ECF No. 24, Joint Statement of Facts Pursuant to Individual Motion Practice Rule IV(c)(5) ¶ 1, dated February 8, 2018; ECF No. 26, Administrative Transcript ("Tr.") 76, 169-176.) The date of alleged onset of plaintiff's disability is March 22, 2012, and plaintiff claimed that he was disabled as a result of bipolar disorder and anxiety disorder. (ECF No. 1, Complaint ("Compl.") ¶ 5; Tr. 65, 169.) On November 23, 2012, the SSA denied plaintiff's claim for disability insurance benefits on the ground that the plaintiff had not worked long enough to qualify for benefits. (Tr. 77-79.) On March 14, 2013, the SSA denied plaintiff's application for supplemental security income on the grounds that he was not disabled within the meaning of the Act because his "condition is not severe enough to keep [plaintiff] from working." (Tr. 81-86.) On March 20, 2013, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 90-92.) On February 10, 2015, Plaintiff appeared and testified before ALJ Kieran McCormack. (Tr. 31-64.) Christina Boardman also appeared, as a vocational expert. (*Id.*) By a decision dated April 14, 2015, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits. (Tr. 13-30.)

On May 13, 2015, Plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 12.) On October 11, 2016 the Appeals Council denied review of the decision, thereby rendering the ALJ decision the final decision in the case. (Tr. 1-6.) On November 7, 2016, plaintiff filed the instant action in federal court. (*See generally* Compl.)

### b. Medical and Non-Medical Evidence

The parties filed a Joint Stipulation of Relevant Facts on February 8, 2018. (ECF No. 24.) By reference the court incorporates those facts herein. Having incorporated the Joint Stipulation of Relevant Facts, the court shall address only the medical opinion evidence and any facts relevant to the ALJ's decision.

Medical Opinion of Treating Source Monica Broderick, MD

On September 2, 2014, psychiatrist Monica Broderick, MD ("Dr. Broderick") completed a medical Source Statement. (Tr. 466-470.) Dr. Broderick noted that plaintiff's treatment began in January 2014 and that he had been seen monthly for medication management and psychotherapy. (Tr. 466.) Dr. Broderick diagnosed the plaintiff with bipolar I disorder, schizoaffective disorder by history, polysubstance abuse by history and antisocial traits. (*Id.*) Dr. Broderick noted that plaintiff was positive for sleep disturbance; mood disturbance; emotional lability; delusions or hallucinations; substance dependence;

anhedonia; paranoia; suicidal ideation; blunt, flat or
inappropriate affect; decreased energy; manic symptoms;
intrusive recollections of a traumatic experience; and hostility
and irritability. (*Id.*) Dr. Broderick noted that on mental
status examination, plaintiff's affect was mildly labile;
plaintiff's orientation to person, time and place was fair;
plaintiff's insight and judgment were limited; and plaintiff's
memory and cognition were fair. (Tr. 467.) Dr. Broderick noted
that plaintiff had been prescribed divalproux, fluphenazine, and
hydroxyzine, and that the medications "can cause severe
drowsiness, difficulty concentrating and fatigue." (*Id.*) Dr.
Broderick opined that plaintiff would be absent from work twice
a month. (*Id.*) Dr. Broderick opined that plaintiff would have
no limitation or a mild limitation in remembering locations and
work-life procedures; in understanding and remembering short,
simple tasks; in carrying out short, simple instructions; and in
adhering to basic standards of neatness and cleanliness. (Tr.
468-469.) Dr. Broderick opined that plaintiff would have a
moderate limitation in understanding and remembering detailed
instructions; in carrying out detailed instructions; in
maintaining regular attendance and being punctual; in making
simple work-related decisions; in performing at a consistent
pace without an unreasonable number and length of rest periods;
in asking a simple question or requesting assistance; in

maintaining socially appropriate behavior; in being aware of hazards and taking precaution; in traveling to unfamiliar places; and in using public transportation. (*Id.*) Dr. Broderick opined that plaintiff would have a marked impairment in maintaining attention and concentration for extended periods of two or more hours; in dealing with the stress of skilled and semi-skilled work; in working in coordination with or proximity to others without being unduly distracted; in completing a normal workday or workweek without interruption from psychologically based symptoms; in interacting appropriately with the public; in responding appropriately to changes in a routine work setting; and in setting realistic goals or making plans independently of others. (*Id.*) Dr. Broderick further opined that plaintiff would have an extreme loss in accepting instruction and responding appropriately to criticism from supervisors and in getting along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*) Dr. Broderick indicated that plaintiff's symptoms would affect his ability to respond appropriately to supervision, coworkers and pressure in the workplace. (*Id.*)

In addition, Dr. Broderick opined that plaintiff would have no restriction of activities of daily living; would have marked deficiencies in maintaining social functioning; would have frequent deficiencies of concentration, persistence

and pace resulting in failure to complete tasks in a timely manner; and would have repeated episodes of decompensation. (Tr. 469-470.)  Dr. Broderick opined that the restrictions had existed since 1999.  (Tr. 470.)

Medical Opinion of Treating Source Jean Liu, MD

On November 16, 2012, psychiatrist Jean Liu, MD ("Dr. Liu") completed a discharge summary upon plaintiff's release from Midstate Correctional Facility.  (Tr. 433-436.)  Dr. Liu opined that plaintiff was diagnosed with mood disorder NOS and antisocial personality disorder.  (Tr. 433.)  Dr. Liu noted that plaintiff had been prescribed Zoloft and Zyprexa.  (*Id.*)  Dr. Liu noted that plaintiff reported auditory hallucinations even when medicated and that he meets with his therapist monthly and his psychiatrist every three months.  (Tr. 435.)  Dr. Liu noted a constricted affect.  (*Id.*) Dr. Liu opined that plaintiff would need continued mental health treatment and that plaintiff's "psychiatric symptoms prevent the work related mental activities needed to sustain employment.  The patient's mental health condition impacts his ability to understand instructions, retain information, stay focused for any length of time, and maintain regular, sustained, gainful employment." (*Id.*)  Dr. Liu opined further that "Mr. Jackson's psychiatric symptoms severely limit his functioning and have impacted his ability to hold any kind of competitive employment, necessitating SSI entitlements.  Mr.

Jackson will need continued psychiatric rehabilitative services to prevent decompensation and avoid recidivism." (*Id.*)

On January 24, 2013, Dr. Liu reopened the discharge summary. (Tr. 329-332.) Dr. Liu's opinions remained unchanged but plaintiff's diagnosis was revised from mood disorder NOS to major depressive disorder, single episode, severe with psychotic features and antisocial personality disorder. (Tr. 329.) Dr. Liu again noted that plaintiff was prescribed Zoloft and Zyprexa. (*Id.*)

Medical Opinion of Nurse Practitioner Kevin M. Lapin, ANP

On September 4, 2014, nurse practitioner Kevin M. Lapin, ANP ("Nurse Lapin") completed a medical questionnaire. (Tr. 472-478.) Nurse Lapin states that plaintiff's diagnoses were diabetes and bipolar/psych disorder. (Tr. 472.) Nurse Lapin also stated that plaintiff complained of dizziness in the morning, slow change of position when rising or climbing stairs, and low back pain with lifting. (*Id.*) Nurse Lapin noted that plaintiff's psychological factors affected his physical condition; plaintiff's pain is never severe enough to interfere with concentration; plaintiff's ability to deal with work stress depends on activity; and plaintiff's medications can cause the side effects of drowsiness and dizziness. (Tr. 473.) Nurse Lapin noted that plaintiff could sit for one hour at a time and for five hours total in an eight-hour workday. (Tr. 473-474.)

Nurse Lapin noted that plaintiff could stand or walk for 15 minutes at a time and for two hours total in an eight-hour workday. (Tr. 474.) Nurse Lapin further noted that plaintiff would need to recline for one hour during a day but could do so during ordinary break times. (Tr. 475.) Nurse Lapin indicated that plaintiff could generally lift and carry up to five pounds, could occasionally lift and carry six to 10 pounds, but could never lift or carry more than 10 pounds. (Tr. 476.) Nurse Lapin stated that plaintiff can balance; could frequently flex forward; could occasionally flex back or rotate left or right; could occasionally stoop; could frequently use his hands for reaching, handling and fingering; and did not need to use an assistance device. (Tr. 476-477.) Nurse Lapin noted that the restrictions were "chronic." (Tr. 478.)

Medical Opinion of Consultative Examiner Christopher Flach, PhD

On February 27, 2013, plaintiff was examined by Christopher Flach, PhD ("Dr. Flach"). (Tr. 343-346.) Dr. Flach noted that plaintiff was an ambulatory, 51 year-old single male who came by bus to the evaluation; reports residing in a shelter; has a GED; and has no work history. (Tr. 343.) Dr. Flach stated that plaintiff described his history of diabetes, and plaintiff was taking Metformin, twice daily, and Glyburide, once daily, and Zoloft. (*Id.*)

Dr. Flach noted that plaintiff complained of difficulty with sleep, nightmares, depressive symptoms including dysphoric moods, anxiety, flashbacks, stress-induced panic attacks at least twice a week that lasted 10 to 15 minutes, pressured speech, expansive mood and auditory hallucinations. (Tr 343-344.) Dr. Flach noted that plaintiff's mood was anxious; his affect was depressed; his motor behavior was lethargic; and his speech was fluent and monotone. (Tr. 344.) Dr. Flach also noted that plaintiff's attention and concentration were mildly impaired; his recent and remote memory were mildly impaired; and his cognitive functioning was thought to be below average. (Tr. 345.) Dr. Flach opined that plaintiff's insight and judgment were fair. (*Id.*) Dr. Flach opined that plaintiff could follow and understand simple directions and instructions and perform simple tasks independently; perform some complex tasks but needed support and encouragement; make some appropriate decisions; maintain a regular schedule and learn new tasks; would have mild problems maintaining attention and concentration; and would have some difficulty relating to others and dealing with stress. (Tr. 345.) Dr. Flach concluded that the results of the examination were consistent with psychiatric problems and plaintiff's symptoms would appear to interfere with his ability to function on a daily basis. (*Id.*)

<u>Medical Opinion of Consultative Examiner Vinod Thukral, MD</u>

On February 27, 2013, plaintiff was examined by internist Vinod Thukral, MD ("Dr. Thukral") at the request of the Commissioner. (Tr. 348-351.) Dr. Thukral noted that plaintiff complained of the physical conditions of diabetes mellitis since 1999 and of injury to his left eye at the age of eight; and of the psychiatric conditions of depression and post-traumatic stress disorder (PTSD), which were diagnosed 15 years ago. (Tr. 348.) The examination notes indicate that plaintiff was taking 1000 mg of Metformin, 10 mg of Glipizide, and an unknown dosage of Zoloft. (*Id.*) Plaintiff denied current drug use or alcohol abuse, but reportedly abused cocaine from approximately 1985 to 1998. (*Id.*) Dr. Thukral noted that plaintiff said he showers, bathes and dresses daily but does not do cooking, cleaning, laundry or shopping due to depression and PTSD. (Tr. 349.) Dr. Thukral noted that plaintiff's vision was 20/30 in his right eye and 20/200 in his left eye. (*Id.*) Dr. Thukral diagnosed plaintiff with diabetes mellitis, by history; severe decreased visual acuity in the left eye due to an injury, by history, and depression and post-traumatic stress disorder (PTSD), on treatment, by history. (Tr. 350.) Dr. Thukral opined that plaintiff's prognosis was "fair;" plaintiff would have no limitations for sitting, standing, bending, pushing, pulling, lifting, carrying or any other such related activities;

and "has moderate limitations for activities requiring fine visual acuity due to severe decreased visual acuity in the left eye." (Tr. 351.)

Medical Opinion of State Agency Psychiatric Consultant J. Echevarria, MD

On March 8, 2013, state agency psychiatric consultant J. Echevarria, MD, ("Dr. Echevarria") a psychiatrist by designation, reviewed plaintiff's file. (Tr. 68-74.) The file indicated that plaintiff had one or more medically-determinable impairments, specifically, severe diabetes mellitus and severe affective disorders. (Tr. 68.) Dr. Echevarria stated that plaintiff had "mild" restriction of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence or pace; and one or two repeated episodes of decompensation, each of extended duration. (*Id*.) Dr. Echevarria opined that "the claimant's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. (*Id*.) Similarly, plaintiff's ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." (*Id*.)

Dr. Echevarria opined that plaintiff had understanding and memory limitations. (Tr. 72.) However, Dr. Echevarria

opined that plaintiff was not significantly limited in his
ability to remember locations and work-like procedures, ability
to understand and remember very short instructions, perform
activities with a schedule, maintain regular attendance and be
punctual with customary tolerances, make simple work-related
decisions, ask simple questions or request assistance, maintain
socially appropriate behavior, adhere to basic standards of
neatness and cleanliness, be aware of normal hazards and take
appropriate precautions, travel in unfamiliar places, use public
transportation, and set realistic goals or make plans
independently of others. (Tr. 72-73.) Dr. Echevarria opined
that plaintiff had moderate difficulty in his ability to carry
out very short and simple instructions, maintain attention and
concentration for extended periods, sustain an ordinary routine
without supervision, complete a normal workday and workweek
without interruptions from psychologically based symptoms,
perform at a consistent pace without an unreasonable number and
length of rest periods, work in coordination with or proximity
to others with being distracted, interact appropriately with the
general public, accept instructions and respond appropriately to
criticism from supervisors, get along with coworkers or peers
without distracting them or exhibiting behavioral extremes,
respond appropriately to changes in the work setting, carry out

detailed instructions and understand and remember detailed
instructions.  (Tr. 72-73.)

### STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under
the Act may bring an action in federal district court seeking
judicial review of the Commissioner's denial of their benefits
"within sixty days after the mailing . . . of notice of such
decision or within such further time as the Commissioner of
Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A
district court, reviewing the final determination of the
Commissioner, must determine whether the correct legal standards
were applied and whether substantial evidence supports the
decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.
1998).

A district court may set aside the Commissioner's
decision only if the factual findings are not supported by
substantial evidence or if the decision is based on legal error.
*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).
"Substantial evidence is 'more than a mere scintilla,'" and must
be relevant evidence that a reasonable mind would accept as
adequate to support a conclusion.  *Halloran v. Barnhart*, 362
F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420
U.S. 389, 401 (1971)).  If there is substantial evidence in the
record to support the Commissioner's factual findings, those

findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the

objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted)); *see also* 20 C.F.R. § 404.152(a)(4). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find claimant not disabled under the Act.

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . . would be of sufficient severity to establish eligibility for

Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

### DISCUSSION

#### a. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since the application date of November 7, 2012. (Tr. 18.)

At step two, the ALJ found that plaintiff suffered from the severe impairments of bipolar disorder and panic disorder with some agoraphobia. (Tr. 18.) The ALJ considered

plaintiff's conditions of diabetes, decreased visual acuity of the left eye, PTSD and past history of drug abuse but found them to be non-severe. (Tr. 18-19.)

At step three, the ALJ determined that from November 7, 2012 through the date of the hearing, plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926), although the ALJ considered Listing 12.04. (Tr. 20-21.)

At step four, the ALJ found that plaintiff had the RFC to perform work at all exertional levels but with the following non-exertional limitations: plaintiff can only work at low stress jobs containing no more than simple, routine, and repetitive tasks; involving only simple work related decisions, with few, if any, workplace changes; and with only occasional interaction with supervisors, coworkers and/or the general public. (Tr. 21.) In arriving at this RFC, the ALJ stated that "although Dr. Broderick is a treating physician, little weight is accorded to her opinion[.]" (Tr. 23.) The ALJ gave "significant weight" to the opinion of Dr. Flach. (*Id.*) Though the ALJ disagreed with Dr. Thukral's opinion "that the claimant has severely decreased vision in his left eye because that is not supported by the record," he gave "significant weight to the

balance of his opinion that the claimant has no exertional limitations[.]" (Tr. 19.) The ALJ gave "little weight" to Nurse Lapin's opinions "as there are no treatment records that could serve to corroborate his opinions." (*Id.*) The ALJ accorded "great weight" to the opinion of state agency psychological consultant Dr. Echevarria. (Tr. 24.) At no point in the decision did the ALJ address the medical opinion of Dr. Liu or assign any weight to it. (*Id.* 19-24.) The ALJ also stated that claimant had no current symptoms and cited the fact that plaintiff had cancelled several appointments as "undermin[ing] his allegation that his symptoms are disabling and render him unable to work." (Tr. 24.) The ALJ concluded that plaintiff had no past relevant work. (Tr. 24.)

At step five, the ALJ found that plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (Tr. 25.) Nevertheless, the ALJ concluded that plaintiff was capable of performing work available in the national economy as a router, DOT 222.587-038; kitchen helper, DOT 318.687-010; or as a house cleaner 323.687-014. (Tr. 25-26.)

Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 CFR 416.920(g), since November 7, 2012 until the date of the hearing. (Tr. 26.)

### b. The RFC is not supported by the medical opinion evidence

*i. The ALJ erred in disregarding the opinion of Dr. Echevarria that the plaintiff would only be capable of handling brief and superficial contact with supervisors, coworkers and the public*

Though the ALJ gave "great weight" to the opinion of Dr. Echevarria, he failed to incorporate Dr. Echevarria's finding that plaintiff would only be capable of handling brief and superficial contact with others. This was error.

It was the finding of all examining sources that plaintiff would be limited in his ability to deal with stress and adequately relate to others. Dr. Flach, to whose opinion the ALJ gave "significant weight," stated that plaintiff would have "some difficulty relating to others and dealing with stress". (Tr. 23.) Dr. Broderick, to whose opinion the ALJ gave limited weight, opined that plaintiff would be moderately limited in maintaining socially appropriate behavior and markedly limited in working in proximity to others without being distracted. (Tr. 479.) It was the opinion of Dr. Echevarria, to whom the ALJ assigned the greatest weight that plaintiff was only capable of handling "brief and superficial contact" with others. (Tr. 69.)

It is dubious that the ALJ's finding that plaintiff is capable of "occasional contact" sufficiently conforms to the requirement that the contact be brief and superficial.

Occasional contact refers to time and dictates that the interaction be limited to no more than one third of the day. SSR 83-10: Titles II and XVI: Determining Capability to Do Other Work—the Medical-Vocational Rules of Appendix 2. The ALJ's finding of "occasional contact" does not adequately address the requirement that the contact be either "superficial" or "brief."

The Commissioner has argued in error that the ALJ's RFC determination sufficiently took plaintiff's mental impairments into account by requiring that the work be "low stress." (Def. Mem. 25.) There is no allowance in the ALJ's RFC for the fact that plaintiff's interaction with others be either brief or superficial. The court finds that this was error.

The court is troubled in particular that the ALJ appears to have cherry-picked medical findings. Reviewing courts decry administrative cherry-picking of relevant evidence. This term refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source. *See Smith v. Bowen,* 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir. 1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a

finding of non-disability."). Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both. *Genier v. Astrue,* 606 F.3d 46, 50 (2d Cir. 2010).

It is legal error for the ALJ to create an RFC which conflicts with portions of a medical source statement that was accorded great weight without explaining the inconsistency. *Dioguardi v Commissioner*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006); and *Peterson v. Astrue* 2 F. Supp. 3d 223, 234-35 (N.D.N.Y. 2012)

Here, as in *Peterson*, the ALJ gave great weight to a source whose opinion fails to support his RFC, and the ALJ has failed to recognize the inconsistency. Moreover, the ALJ's hypothetical to the vocational expert failed to incorporate any limitation that plaintiff's interactions with others be either brief or superficial. (Tr. 53-54.)

For the foregoing reasons, the court must remand.

ii. *The ALJ did not account for the plaintiff's moderate limitation in maintaining concentration, persistence and pace*

Additionally, the ALJ erred by making an RFC determination that failed to account explicitly for the moderate non-exertional limitations that the ALJ determined plaintiff had in maintaining concentration, persistence and pace. (Tr. 20.)

Under the Second Circuit's holding in *McIntyre v. Colvin*, 758 F.3d 146 (2d. Cir. 2014), an ALJ is not permitted to proceed on an assumption that a restriction to "simple" or "unskilled" work is equivalent to, or *per se* incorporates, a limitation relating specifically to "concentration, persistence, or pace." Defendant, however, argues that, by restricting plaintiff to only simple work and occasional interaction with others, the ALJ's RFC "incorporated those assessments." (Def. Mem. 15.) The court disagrees.

A finding that a plaintiff has limitations in concentration, persistence and pace must be at least implicitly accounted for in a hypothetical. As the Second Circuit has stated, "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon,* 54 F.3d 1019, 1031 (2d Cir. 1995). An ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a

claimant's limitations in concentration, persistence, and pace[.]" *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176,1180 (11th Cir. 2011) (collecting cases). Thus, an ALJ's hypothetical should incorporate any limitations in concentration, persistence, and pace. *McIntyre v. Colvin,* 758 F.3d 146, 151-52 (2d Cir. 2014) (ALJ's explicit limitation of hypothetical to "simple, routine, low stress tasks" "after fully explaining [claimant's] physical restrictions" sufficiently accounted for "the combined effect of [claimant's] impairments") (internal citation and quotations omitted).

    In considering the parties' positions, the court notes that it is undisputed that all medical source opinions indicate that plaintiff had limitations in maintaining concentration and attention, and in performing activities within a regular schedule, (Tr. 72-73, 345, 468-469); the ALJ generally found that plaintiff had "moderate difficulties" in the domain of "concentration, persistence, and pace" (Tr. 20); and the ALJ failed to include any such limitations (at least explicitly) in its RFC determination. More importantly, Dr. Echevarria opined that plaintiff had moderate difficulty in his ability to: carry out very short and simple instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without supervision. Because Dr. Echevarria, to whom the ALJ assigned "great weight" opined that plaintiff would have

a moderate limitation in carrying out short and simple instructions or sustaining an ordinary routine without supervision, the court cannot find that the medical evidence supports a finding that plaintiff can engage in routine, simple work without considering the time off task. The ALJ's failure to consider the combined effect of plaintiff's impairments or explicitly limit the hypothetical to incorporate plaintiff's non-exertional limitations, where the medical evidence does not demonstrate plaintiff can engage in simple, routine tasks or unskilled work despite those limitations, was error. The court remands on this basis.

Further, plaintiff argues that the ALJ has failed to properly weigh the medical evidence. The court agrees. In particular, the ALJ erred in failing to consider the opinion of Dr. Jean Liu, a treating source.

"The Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." *Crocco*, 2017 WL 1097082, at *15; see also *Barry*, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, the RFC assessment shall be based

on a review of the entire record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ's decision does not mention the medical opinion of Dr. Liu, only addressing Dr. Liu's discharge summary in a cursory manner when he notes that plaintiff was seen by a therapist and psychiatrist, was previously hospitalized three times for suicide and was recommended to continue with treatment.  (Tr. 22.)  Moreover, the ALJ failed to acknowledge or address the opinions set forth by Dr. Liu as to plaintiff's functional limitations, despite the fact that Dr. Liu was plaintiff's treating psychiatrist.  Thus, the ALJ has failed to consider the record as a whole.

The court remands with the direction that the ALJ consider the opinions and treatment by Dr. Liu, and adequately explain any weight to be given to those opinions and treatment. The court does not address plaintiff's argument that the ALJ erred in giving little weight to the opinions of Dr. Broderick. On remand, the ALJ will be required to consider the record as a whole, and as he considered the consistency of Dr. Liu's opinions with those of Dr. Broderick, it is possible that the weight that he assigns to Dr. Broderick's opinions might change.

The court also notes that the ALJ erred in giving little weight to the opinion of Nurse Lapin on the ground that there were no supporting treatment records.  (Tr. 19.)  To the

extent that it appears that the ALJ was not aware that Nurse Lapin treated plaintiff at Sunrise Medical Group, (Tr. 499-505) and Nurse Lapin's records are contained in the record, the court respectfully directs that the ALJ properly consider Nurse Lapin's opinions as well.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82-83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g., Parker v.*

*Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue,* 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

The court has found that ALJ did not apply the law appropriately in this case and additionally found that further explanation is necessary to clarify the ALJ's rationale. Accordingly, this case should be remanded for further proceedings consistent with this decision.

**SO ORDERED.**

Dated:     Brooklyn, New York
           December 27, 2019

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge